**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

DONNA EPPS, On her own behalf
and on behalf of all others
similarly situated,

*Plaintiff-Appellant,*

v.

JP MORGAN CHASE BANK, N.A.,

*Defendant-Appellee,*

and

CHASE AUTO FINANCE,

*Defendant.*

No. 10-2444

CENTER FOR RESPONSIBLE LENDING;
NATIONAL CONSUMER LAW CENTER,

*Amici Supporting Appellant,*

AMERICAN BANKERS ASSOCIATION;
CONSUMER BANKERS ASSOCIATION;
THE FINANCIAL SERVICES
ROUNDTABLE,

*Amici Supporting Appellee.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, Senior District Judge.
(1:10-cv-01504-WMN)

Argued: January 25, 2012

Decided: April 5, 2012

Before TRAXLER, Chief Judge, and AGEE and DIAZ,
Circuit Judges.

Vacated and remanded by published opinion. Judge Agee
wrote the opinion, in which Chief Judge Traxler and Judge
Diaz joined.

**COUNSEL**

**ARGUED:** Frank Paul Bland, Jr., PUBLIC JUSTICE, Washington, D.C., for Appellant. Martin C. Bryce, Jr., BALLARD SPAHR, LLP, Philadelphia, Pennsylvania, for Appellee. **ON BRIEF:** Melanie Hirsch, PUBLIC JUSTICE, Washington, D.C.; Scott C. Borison, LEGG LAW FIRM LLC, Frederick, Maryland, for Appellant. Alan S. Kaplinsky, BALLARD SPAHR, LLP, Philadelphia, Pennsylvania; Glenn A. Cline, BALLARD SPAHR, LLP, Baltimore, Maryland, for Appellee. Joanne L. Werdel, Nina F. Simon, Kenneth Edwards, CENTER FOR RESPONSIBLE LENDING, Washington, D.C.; John Van Alst, NATIONAL CONSUMER LAW CENTER, Boston, Massachusetts, for Amici Supporting Appellant. C. Dawn Causey, Gregory F. Taylor, AMERICAN BANKERS ASSOCIATION, Washington, D.C., for Amici Supporting Appellee.

**OPINION**

AGEE, Circuit Judge:

Donna Epps appeals the district court's judgment granting JP Morgan Chase Bank, N.A.'s ("Chase") motion to dismiss

her putative class action claim brought pursuant to the Maryland Credit Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann., Com. Law § 12-1001 *et seq*. The district court concluded that federal regulations preempt relevant portions of the CLEC and that the retail sales installment contract ("RIC") signed by Epps and Chase's predecessor in interest did not mandate that Chase comply with the CLEC. For the reasons set forth below, we conclude that the district court erred in both respects. Accordingly, we vacate the judgment and remand for further proceedings consistent with this opinion.

I.

Background and Proceedings Below

In 2007, Epps purchased a used vehicle from Thompson Toyota Scion ("Thompson"), an automobile dealer, in Maryland. The purchase was financed through a RIC between Epps and Thompson that included the following language: "Applicable Law: Federal law and Maryland law apply to this contract. This contract shall be subject to the [CLEC]." (J.A. 51). Thompson later assigned the RIC to Chase. By the end of 2009, Epps had fallen behind in, and then ceased entirely, her payments to Chase under the RIC.[1]

When Epps defaulted, Chase repossessed the vehicle and then sent Epps a notice stating that "[w]e will sell the Vehicle at private sale sometime after 12/28/2009." (J.A. 38). Although the notice informed Epps of her right to redeem the vehicle, it did not set forth the location of the vehicle or the time and place where it was to be sold, as required by the CLEC.[2]

---

[1]In reviewing the grant of a motion to dismiss, we accept as true the facts alleged in the complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 228-29 (4th Cir. 2004).

[2]The district court accurately summarized the relevant provisions of the CLEC at issue here:

After the vehicle was sold, Chase sent Epps a document entitled "Explanation of Calculation of Surplus or Deficiency." (J.A. 40-41). The document indicated that the vehicle was sold on January 25, 2010 to a purchaser identified only as "Manheim Fredericksburg." The document also reflected that Chase would seek a deficiency judgment against Epps for the unpaid balance of the loan.

Epps then commenced the underlying putative class action in Maryland state court, raising claims based on the CLEC, as well as for breach of contract, injunctive relief, restitution, unjust enrichment, and violation of the Maryland Consumer Protection Act. Chase removed the action to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1453 (the removal provisions of the Class Action Fairness Act). In district court, Epps moved for class certification and for partial summary judgment, whereupon Chase moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Chase argued that Epps' claims, which were based partially on the CLEC, must fail because relevant portions of that state statute had been preempted by the National Bank Act ("NBA"), 12 U.S.C. § 1 *et seq.*, and its implementing reg-

----

[Pursuant to the CLEC], a credit grantor can repossess property securing a loan but only by following certain notice provisions. Specifically, CLEC requires that a notice be sent within five days after repossession that includes the borrower's rights to redeem the property, the borrower's rights as to a resale and liability for a deficiency, and the exact location where the property is stored. [Md. Code Ann., Com. Law], § 12-1021(e). Furthermore, CLEC requires that, ten days before any sale, notice be given by specified means as to the time and place of the sale. *Id.* § 12-1021(j)(1)(ii). After a sale of repossessed goods, CLEC also requires a full accounting to the borrower which includes: expenses related to the sale; the purchaser's name, address, and business address; and the number of bids sought and received. *Id.* § 12-1021(j)(2).

(J.A. 65).

ulations promulgated by the Office of the Comptroller of the Currency ("OCC").

The district court ruled in favor of Chase and dismissed Epps' claims. After discussing the pertinent OCC regulations the district court cited extensively to two other district court cases in support of its conclusion that application of the CLEC was preempted: *Perez v. Midland Funding, LLC*, 2010 WL 4117461 (N.D. Cal. Oct. 19, 2010) and *Aguayo v. U.S. Bank*, 658 F. Supp. 2d 1226 (S.D. Cal. 2009), *rev'd*, 653 F.3d 912 (9th Cir. 2011).[3] In each of those cases, a district court in California concluded that California's Rees-Levering Act was preempted by the NBA and the relevant OCC regulation, 12 C.F.R. § 7.4008. Like the CLEC, the Rees-Levering Act is a consumer protection statute that imposes certain post-repossession notice requirements on lenders in the automobile financing context. Also, like the CLEC, the Rees-Levering Act prevents a lender from recovering a deficiency judgment against a buyer if the lender does not comply with the notice requirements. *See* Cal. Civ. Code § 2983.2.

Based on *Perez* and *Aguayo*, the district court concluded that the CLEC's post-repossession notice requirements were related to the initial extension of credit to the purchaser, and accordingly, preempted by the federal OCC regulations. The district court also rejected Epps' contention that the "savings clause" of the regulations, 12 C.F.R. § 7.4008(e), exempted her claims from preemption.

The district court also dismissed Epps' breach of contract claim, even though the RIC specified that the CLEC applied. In the district court's view, that part of the RIC was void

---

[3]While this case was pending on appeal, the Ninth Circuit Court of Appeals reversed the district court's judgment in *Aguayo*, holding that the Rees-Levering Act, a state law similar to the CLEC, is not preempted by federal law. We discuss the Ninth Circuit's holding, which we find persuasive, in greater detail *infra*.

under the rule that "where one party to a contract had no choice but to include in that contract a provision calling for the applicability of a particular law, the other party to the contract cannot assert a breach of contract claim based on a violation of that law. *Wells Fargo Home Mortgage v. Neal*, 922 A.2d 538, 545-46 (Md. 2007)." (J.A. 83). The court then dismissed Epps' complaint in its entirety for failure to state a claim under Rule 12(b)(6).[4]

Epps noted a timely appeal of the district court's judgment. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

## Analysis

We review de novo the grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Whether a state law is preempted by federal law is a legal question that this Court reviews de novo. *AES Sparrows Point LNG, LLC v. Smith*, 527 F.3d 120, 125 (4th Cir. 2008).

On appeal, Epps argues that the district court erred in concluding that the NBA and its regulations preempt the CLEC, that it erred in rejecting Epps' breach of contract claim that Chase bound itself to follow the CLEC by taking assignment of the RIC, and that it erred in dismissing Epps' claims that do not implicate the CLEC.

---

[4]The district court did not state its rationale for dismissing Epps' remaining claims for declaratory and injunctive relief, restitution and unjust enrichment, and violation of the Maryland Consumer Protection Act.

We turn first to the question of whether the district court properly concluded that the NBA and associated regulations preempt the CLEC.

## A.

### Preemption

The Supreme Court has "repeatedly made clear that federal control shields national banking from unduly burdensome and duplicative state regulation." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007) (citations omitted). "Federally chartered banks are subject to state laws of general application in their daily business to the extent such laws do not conflict with the letter or the general purposes of the NBA." *Id.* However, "the [s]tates can exercise no control over [national banks], nor in any wise affect their operation, except in so far as Congress may see proper to permit." *Id.* (quoting *Farmers' & Mechanics' Nat'l Bank v. Dearing*, 91 U.S. 29, 34 (1875)).

### i.

The NBA authorizes national banks to exercise "all such incidental powers as shall be necessary to carry on the business of banking," including "loaning money on personal security." 12 U.S.C. § 24 (Seventh). Congress has also authorized the OCC to promulgate regulations implementing the NBA. *See* 12 U.S.C. § 93a. At issue in this case are the OCC regulations found at 12 C.F.R. § 7.4008(d) and (e), which describe the circumstances under which state law is (and is not) preempted by the NBA. Those regulations contain both an express preemption provision and a savings clause. The express preemption provision states as follows:

> (1) Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally

authorized non-real estate lending powers are not applicable to national banks.

(2) A national bank may make non-real estate loans without regard to state law limitations concerning:

> (i) Licensing, registration . . . filings, or reports by creditors;
>
> . . .
>
> (vi) Security property, including leaseholds;
>
> . . .
>
> (viii) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents[.]

12 C.F.R. § 7.4008(d).[5]

Immediately following is the savings clause:

> State laws on the following subjects are not inconsistent with the non-real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' non-real estate lending powers:
>
> (1) Contracts;

---

[5]These regulations were amended effective July 21, 2011. The parties have not argued that the amendments are retroactive, and thus we apply the regulations as they existed at all times relevant to the transactions in this case.

. . .

(4) Rights to collect debts;

(5) Acquisition and transfer of property[.]

*Id.* § 7.4008(e) (the "savings clause").

There is no question that the RIC in this case, if made in the first instance by Chase, would have been a loan under the bank's "non-real estate lending powers." Putting aside the question for now of the effect of assignment of the RIC by an initiating nonbank lender, Thompson, we first conclude that even if the loan were originally made by Chase, the CLEC repossession provisions at issue here are not within the ambit of the preemption clause of § 7.4008(d). In addition, we hold that the savings clause of § 7.4008(e) specifically covers the actions at issue here and forecloses regulatory preemption.

ii.

"Courts generally apply a presumption against federal preemption in fields the states traditionally regulate." *Nat'l City Bank of Ind. v. Turnbaugh*, 463 F.3d 325, 330 (4th Cir. 2006) (citation omitted). Epps argues that this Court should consider the CLEC a consumer protection law and apply a presumption against federal preemption, citing *Aguayo* as support for that proposition. 653 F.3d at 917. We do not find that argument persuasive, and note that the Ninth Circuit did not reach that issue. Despite characterizing the Rees-Levering Act as a consumer protection law, the *Aguayo* Court recognized that national banks "have often been given the benefit of the doubt in preemption questions" and that the presumption against preemption is generally inapplicable in the national bank context. *Id.* at 917 n.1. The court, nevertheless, merely stated that "[t]he presumption is not material to our decision in this case." *Id.*

An assumption against preemption "is not triggered when a State regulates in an area where there has been a history of significant federal presence." *Turnbaugh*, 463 F.3d at 330 (quoting *United States v. Locke*, 529 U.S. 89, 108 (2000)) (alteration omitted). In the same vein, the Supreme Court has also stated that "grants of both enumerated and incidental 'powers' to national banks [are] grants of authority not normally limited by, but rather ordinarily pre-empting, contrary state law." *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 32 (1996).

In *Turnbaugh*, we considered whether the NBA and OCC regulations preempted certain Maryland laws that, in relevant part, limited prepayment penalties on adjustable rate mortgage loans originated by operating subsidies of a national bank. In considering whether to apply a presumption against preemption, we concluded that no such presumption existed in that case because "[t]he pertinent regulations define the scope of the national banks' authority to conduct business through operating subsidiaries; undoubtedly these issues involve the 'incidental powers' of national banks." *Turnbaugh*, 463 F.3d at 331.

Considering that the NBA authorizes national banks to make loans like the RIC (i.e., on personal security), we similarly conclude that by regulating the authority of a national bank to collect a deficiency judgment following default on a loan, the CLEC regulates an area with authorized federal presence. However, as we discuss *infra*, the degree to which the CLEC regulates an enumerated power of the national banks is merely incidental. Accordingly, we decline to apply the presumption against federal preemption and turn to the preemptive effect of the OCC regulations.

iii.

Pursuant to the Constitution's Supremacy Clause,[6] state

---

[6]U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; . . . shall be the

laws that conflict with federal law are preempted. *Cox v. Shalala*, 112 F.3d 151, 154 (4th Cir. 1997) (citation omitted). In conducting our preemption analysis, we are guided first and foremost by the maxim that "the purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 564 (2009) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)).

Congress may evince an intent to preempt state law in three ways. First, federal law may preempt state law by expressly declaring Congress' intent to do so. *Cox*, 112 F.3d at 154 (citing *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)). Second, Congress can "occupy the field" by "regulating so pervasively that there is no room left for the states to supplement federal law." *Id.* (citing *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982)). And third, a state law is preempted "to the extent it actually conflicts with federal law." *Id.* (citing *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983)).

We first observe that the NBA does not expressly preempt state law, but as discussed above the OCC has promulgated regulations that do contain express preemption provisions. *See* 12 C.F.R. § 7.4008.[7] Chase contends that the OCC regulations at § 7.4008(d) preempt the CLEC because that statute imposes the burden of requiring that Chase create a customized notice for each customer every time it seeks to repossess personal property. The district court found this argument compelling, noting that "[t]he burden that would be imposed on national banks of complying with the various notice and disclosure statutes of all fifty states is readily apparent." (J.A. 76).

---

supreme Law of the Land; . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding").

[7]"Federal regulations have no less pre-emptive effect than federal statutes." *de la Cuesta*, 458 U.S. at 153.

Because of this "readily apparent" burden, Chase argues that the CLEC impermissibly interferes with its ability to make non-real estate loans. Chase claims that because that power is granted specifically by the NBA, 12 U.S.C. § 24 (Seventh), CLEC's notice requirements run afoul of 12 C.F.R. § 7.4008(d)(1), which makes inapplicable any state law that "obstruct[s], impair[s], or condition[s] a national bank's ability to fully exercise its Federally authorized non-real estate lending powers."

The primary flaw in Chase's reasoning is that the CLEC simply does not directly condition any power expressly granted to a national bank by Congress. The challenged portions of the CLEC are found at Md. Code Ann. Com. Law § 12-1021(a)(1), which authorizes a credit grantor to "repossess tangible personal property securing a loan . . . if the consumer borrower is in default." Under the CLEC, repossession is only permitted if the creditor complies with the notice requirements set forth at § 12-1021(c)-(e). The notice requirements that Chase complains of are conditions of repossession only—a power granted to Chase pursuant to state law, not the NBA. Thus we conclude there is no express preemption provision in § 7.4008(d) that preempts application of the CLEC in this case.

Neither do we find field preemption applicable, as the NBA and OCC regulations do not "occupy the field." The Ninth Circuit specifically addressed a similar argument in *Aguayo* where the banks, like Chase here, analogized OCC regulations to somewhat similar regulations with preemptive effect issued by the Office of Thrift Supervision ("OTS").[8] The *Aguayo* court convincingly rejected that argument and confirmed the absence of field preemption.

---

[8] The *Aguayo* court found the analogy inapt, as the OTS has explicit field preemption and the OCC does not. *See id.* at 921 (citing 12 C.F.R. § 560.2(a)).

> [W]hile the OTS and the OCC regulations are similar in many ways, *compare* 12 C.F.R. § 560.2(b),(c) *with*, 12 C.F.R. § 7.4008(d),(e), the OCC has explicitly avoided full field preemption in its rulemaking and has not been granted full field preemption by Congress. *Compare* 12 C.F.R. § 560.2(a) (occupying the field) *with, e.g.*, OCC Final Rule, 69 Fed. Reg. 1904-01, 1910-11 (Jan. 13, 2004), 2004 WL 50763 ("[W]e decline to adopt the suggestion of these commenters that we declare that these regulations 'occupy the field' . . . .").

*Aguayo*, 653 F.3d at 921-22.

Chase finally presents a hybrid contention that blends express and conflict preemption arguments, contending that the power granted by the NBA to make loans includes the power to collect them and thus preemption is implied. This is so, according to Chase, because "the power to make loans under § 24 (Seventh) would have little significance if Congress did not intend for a national bank to seek repayment of those loans and, when necessary, exercise its rights in any collateral securing such loans." Br. of Appellee at 18.

We agree with the uncontroversial premise that the power to collect on secured collateral in the event of default is related to the extension of credit. Chase's argument, however, reads too much into the CLEC, which does not prevent Chase from collecting on debts. Although debt collection and extension of credit are related, they are distinct concepts. In the present case, those differences are reflected in the different ways that the regulation treats the components of the debtor-creditor relationship.

The regulation itself recognizes that "debt collection" is treated differently from an extension of credit; the former appearing in the savings clause of § 7.4008(e) as a category of state law that is *not* preempted by the NBA. The Supreme

Court has long recognized that national banks are subject to state law regarding collection of debts.

> [National Banks] are subject to the laws of the State, and are governed in their daily course of business far more by the laws of the State than of the nation. All their contracts are governed and construed by state laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on State law.

*Nat'l Bank v. Commonwealth*, 76 U.S. 353, 362 (1869).

Chase's argument would have us ignore the distinction drawn in the OCC regulations between lending and debt collection. Recognizing the evident distinction drawn between the two concepts, we conclude that the CLEC does not "obstruct, impair, or condition" Chase's exercise of its federally authorized powers to extend credit.

Chase argues, though, the post-repossession notices required by the CLEC are "disclosures" and accordingly the aspect of the CLEC requiring the notices is preempted pursuant to 12 C.F.R. § 7.4008(d)(2)(vii) (allowing banks to make non-real estate loans without regard to, inter alia, "disclosure and advertising"). We do not agree.

The Ninth Circuit considered and rejected a similar challenge under the analogous Rees-Levering Act in *Aguayo*. The court began by noting that "[w]hen performing statutory interpretation, 'words are uniformly presumed, unless the contrary appears, to be used in their ordinary and usual sense, and with the meaning commonly attributed to them.'" *Aguayo*, 653 F.3d at 925 (quoting *Caminetti v. United States*, 242 U.S. 470, 485-86 (1917)). The court then drew a distinction between a "disclosure," or, "informational statement of terms prior to entering a transaction," and a "notice," or "a specific communication of a claim or demand submitted to a party in the

course of, or at the conclusion of, a transaction[.]" *Id.* at 926. The court ultimately held that laws governing the former are preempted, while laws governing the latter are not.

We find the Ninth Circuit's reasoning persuasive and agree that the notices here, which only relate to debt collection upon default under an existing loan, are not "disclosures" within the meaning of the NBA and OCC regulations. This conclusion is bolstered by "the cardinal rule that statutory [or regulatory] language must be read in context because a phrase gathers meaning from the words around it." *Van Alstyne v. Elec. Scriptorium, Ltd.*, 560 F.3d 199, 204 (4th Cir. 2009) (citation and alterations omitted). Section 7.4008(d)(2)(viii) discusses state laws concerning "[d]isclosure and advertising, . . . statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit related documents." Read in context with the other types of laws preempted under this subsection, it is clear that the "disclosures" referenced are related to the application for and extension of credit—not the collection of debt after the creditor/debtor relationship has been established and the credit has been extended.

We similarly reject Chase's contention that the CLEC pre- and post-repossession notice requirements concern "other credit related documents." We are again in agreement with the *Aguayo* court's analysis of that regulation: "[t]he final clause [of § 7.4008(d)(2)(viii)], 'other credit-related document,' seems to act as a catch-all term to describe any other documents that may be used in an ongoing lending relationship." 653 F.3d at 927 (alteration omitted). The CLEC's notice requirements are only triggered when a creditor is attempting to collect on a debt, not by the establishment of the lending relationship or the creditor's decision to make the loan. *See id.* at 927-28. The post-default repossession notice requirements imposed by the CLEC do not regulate "credit-related documents" as the term is used in the OCC regulations.

Accordingly, the CLEC is not preempted by § 7.4008(d).

iv.

Closely tied to our foregoing conclusion is our corollary determination that the district court also erred by holding that the savings clause at § 7.4008(e) does not prevail over the § 7.4008(d) preemption provisions, assuming those applied.

The savings clause preserves from preemption state laws concerning contracts and debt collection, "to the extent that they only incidentally affect the exercise of national banks' non-real estate lending powers." 12 C.F.R. § 7.4008(e). The OCC described the origin of its inclusion of "debt collection" in the savings clause as follows:

> One category of state law included in the proposed list of state laws generally not preempted was "debt collection." Consistent with Supreme Court precedents addressing this type of state law, we have revised the language of the final rule to refer to national banks' "right to collect debts."

OCC, Final Rule, 69 Fed. Reg. 1904-01, 1912 (Jan. 13, 2004 (footnote omitted). As discussed *supra*, *National Bank v. Commonwealth* describes a national bank's right to collect debts as based in state law. 76 U.S. at 362. Therefore, the inclusion of "debt collection" in the savings clause is a reflection of the Supreme Court's recognition that generally applicable state debt collection laws apply to national banks. As the *Aguayo* court observed, "debt collection, and specifically the right to repossess property that is the subject of a secured transaction, has deep roots in common law and remains a fixture of state, not federal law." 653 F.3d at 923.

Nonetheless, Chase contends that the CLEC, to the extent it is a debt collection law, is not covered by the § 7.4008(e) savings clause because the CLEC more than incidentally bur-

dens the exercise of Chase's non-real estate lending power. We do not agree, in part, for the reasons discussed earlier noting that post default debt collection is distinct from the creditor's initial determination to extend credit to the debtor. Moreover, under Chase's theory, *any* state debt collection regulation would burden the exercise of a national bank's lending power, and all state laws applicable to debt collection would be invalid as applied to such banks. Addressing a similar argument in *Aguayo*, the Ninth Circuit concluded, as do we, that the result of Chase's position is "[i]t would not be bound by state law . . . nor would it be operating under any specific federal law because no federal law governs self-help repossession." 653 F.3d at 924.

The conclusion that the CLEC comes within the umbrella of the savings clause is further supported by statements made by the Comptroller of Currency at the time the savings clause was adopted. The Comptroller represented that the preemption regulations "do[ ] not preempt undiscriminating laws of general applicability that form the legal infrastructure for conducting a banking or other business[,]" listing as examples "state laws on contracts, rights to collect debts, acquisition and transfer of property, taxation, zoning, crimes, and torts." Statement of John D. Hawke, Jr., Comptroller of the Currency, Before the S. Comm. on Banking, Hous. & Urban Affairs, on Federal Preemption of State Laws, Washington, D.C., 23 OCC Q.J. 69 (Sept. 2004).

Under the OCC's own interpretation, then, the relevant inquiry is whether the state law at issue is "undiscriminating," that is, does it treat national banks differently from other lenders. *See also Aguayo*, 653 F.3d at 924. Section 12-1021 of the CLEC speaks only of the ability of "credit grantors" to repossess personal property. "Credit grantor" is in turn broadly defined by the CLEC to include "any individual, corporation, business trust, statutory trust, estate, trust, partnership, association, two or more persons having a joint or common interest, or any other legal or commercial entity making a loan or other

extension of credit[,]" and also includes "[a]ny bank, trust company, depository institution, or savings bank having a branch in [Maryland]." Md. Code Ann. Com. Law § 12-1001(g). It is clear that the CLEC applies to any lender in Maryland and does not treat national banks differently from any other creditor. Plainly, the CLEC does not discriminate against national banks, thus the savings clause applies to preserve the CLEC from any preemptive effect of the NBA or OCC regulations.

For all the foregoing reasons, the district court erred in concluding that the CLEC was preempted by the NBA or the OCC regulations.

## B.

## Epps' Other Claims

We next address Epps' argument on appeal that the district court erred in ruling that the RIC is not enforceable as a matter of law, for breach of contract. The RIC clearly provides that it shall be subject to the terms of the CLEC. Thus, the question before us is whether such a term is enforceable against Chase as a matter of contract law. While the district court held that Chase was not bound by the election of the CLEC as a matter of Maryland law, we do not agree.

This Court and the Supreme Court have recognized that when a party to a contract voluntarily assumes an obligation to proceed under certain state laws, traditional preemption doctrine does not apply to shield a party from liability for breach of that agreement. *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 229 (1995) ("a common-law remedy for a contractual commitment voluntarily undertaken should not be regarded as a requirement imposed under state law[.]") (internal citation, quotation marks, and alteration omitted); *College Loan Corp. v. SLM Corp.*, 396 F.3d 588, 598 (4th Cir. 2005) (where parties to an agreement voluntarily assume federal

standards in their bargained-for private contract, party's argument that enforcement of the agreement is preempted by that federal law "boils down to a contention that it was free to enter into a contract that invoked a federal standard as the indicator of compliance, then to proceed to breach its duties thereunder and to shield its breach by pleading preemption. . . . [F]ederal supremacy does not mandate such a result."). Nevertheless, under Maryland law, when a contractual term incorporating state or federal law is not "the product of a negotiation yielding a freely-entered contract," it will not be enforced. *Wells Fargo Home Mortg., Inc. v. Neal*, 922 A.2d 538, 546 (Md. 2007).

In *Wolens*, the Supreme Court considered whether the Airline Deregulation Act of 1978 ("ADA") preempted certain Illinois consumer protection laws that were invoked by plaintiffs challenging American Airlines' retroactive changes in terms and conditions for its frequent flyer program. 513 U.S. at 222. The Court concluded that the ADA's preemption provisions prevent states from regulating air carriers, but "allows room for court enforcement of contract terms set by the parties themselves." *Id.* The *Wollens* Court reasoned that "terms and conditions airlines offer and passengers accept are privately ordered obligations, and thus do not amount to a State's enactment or enforcement of any law, rule, regulation, standard, or other provision having the force and effect of law[.]" *Id.* at 228-29 (internal quotation marks and alterations omitted).

The Court of Appeals of Maryland applied *Wolens* in *Wells v. Chevy Chase Bank, F.S.B.*, 832 A.2d 812 (Md. 2003). In *Wells*, credit card holders brought breach of contract claims against the issuing bank. The agreement between the parties stated that it would be governed by Subtitle 9, §§ 12-901, 12-924 of the Commercial Law Article of the Maryland Annotated Code, and "applicable federal laws." *Id.* at 813. The bank argued, relying on *Wolens*, that because the contract invoked a specific state statute, the bank's obligations were

"enlarge[d] or enhance[d] based on state laws or policies external to the agreement," and were therefore preempted. *Id.* at 831 n.15. The court rejected the bank's argument, finding instead that compliance with Subtitle 9 is mandated, not from some external force, but "only because the agreement between the parties refer to it . . . ; it was not imposed on [the bank] as a matter of law." *Id.* at 832. Accordingly, the court concluded that *Wolens* was applicable and allowed the card holders' breach of contract action to proceed.

In *Neal*, the Court of Appeals of Maryland considered whether a mortgagor had claims against its mortgagee for breach of contract based on Department of Housing and Urban Development ("HUD") regulations that were invoked in a Fair Housing Administration ("FHA") insured loan agreement between the parties. 922 A.2d at 541. The mortgagor argued that, based on *Wolens* and *Wells*, the HUD regulations were applicable and formed the basis for a breach of contract claim. The court rejected that line of argument, holding instead that the paragraph in the FHA-approved deed of trust that contained the reference to the regulations was not a bargained-for term between the parties. *Id.* at 546. The court noted that Wells Fargo, the mortgagee, took assignment of the loan, and therefore was not a participant in negotiations or the drafting of the agreement. *Id.* Moreover, the original mortgagee-assignor "also had no control over the substantive terms of the contract" because it was a "prefabricated FHA form." *Id.* at n.7.

Relying on *Neal*, Chase argues that it did not negotiate the terms of the RIC, and therefore, it cannot be bound by the election of the CLEC. It also claims that it was forced to include an election of the CLEC, and therefore, the choice was not voluntary and accordingly unenforceable. We do not agree.

First, in our view, the facts of this case more closely resemble *Wells* than *Neal*. In both this case and *Wells*, the contract

contained an explicit election of a specific Maryland statute. While Chase is correct that it was not a drafter of the RIC, in *Neal* neither the assignor nor the assignee had any control over the terms of the FHA deed of trust. Here, Thompson (and by extension, its successor-in-interest, Chase), had the option of either electing to have the RIC governed by the CLEC, or instead by the Maryland Retail Installment Sales Act ("RISA"), Md. Code Ann., Com. Law § 12-601 *et seq*. Thompson chose to adopt the CLEC when it could have made a different choice, the RISA. Chase is bound by that choice.

The differences between the CLEC and the RISA illuminate the flaw in Chase's reasoning. As Chase itself notes, the RISA limits late fees to the lesser of $10 or five percent of the amount due. The CLEC allowed Thompson (and subsequently Chase) to mandate a ten percent late fee. Thompson evidently made a business judgment that it would accept the repossession notice requirements of the CLEC in exchange for the CLEC's less restrictive late fee provisions. In no sense was this decision forced upon Thompson, any more than it was forced upon Chase.

Chase bases its argument that the CLEC is mandatory on § 12-1013.1(b)(2), which states that "[i]f a person fails to elect in accordance with this section to extend closed end credit under this subtitle, the provisions of this subtitle do not apply." Put another way, a lending agreement must specifically state that the CLEC applies in order for the provisions of the CLEC to govern that agreement. Otherwise, the RISA applies. *See* Md. Code Ann. Com. Law § 12-601(m).

Chase's argument fails because compliance with the CLEC is only mandatory to the extent that parties to a lending agreement agree to be bound by the CLEC. Under Maryland law, the parties could simply choose to be bound by the RISA. Chase has purchased a RIC that elects the CLEC, sought higher late fees from Epps (as authorized by the CLEC), and, upon breaching the RIC by failing to abide by its repossession

notice requirements, claimed that the election of the CLEC was foisted upon it. In *Wells*, the Court of Appeals of Maryland rejected a defendant's efforts to do the same. Similarly, we conclude that Chase may not take advantage of favorable, voluntary, contract terms, and then cry foul when it fails to adhere to its own contractually derived obligations. Accordingly, the district court erred in dismissing Epps' breach of contract claim.

Finally, Epps claims on appeal that the district court erred in dismissing her claims unrelated to the CLEC and the RIC. Because we now vacate the court's judgment with respect to the CLEC and contract claims, we do not address whether Epps adequately pled claims under the Maryland Consumer Protection Act, for declaratory and injunctive relief, or for unjust enrichment, particularly since the district court failed to address these claims (other than to dismiss them) in its prior opinion. Instead, our remand will allow the district court the plenary opportunity to address these other claims.

### III.

Based on the foregoing, we vacate the judgment of the district court and remand for further proceedings consistent with this opinion.

*VACATED AND REMANDED*