COURT OF APPEALS
DECISION
DATED AND FILED

February 18, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP125**

STATE OF WISCONSIN

Cir. Ct. Nos. **2021SC19448**
**2021CV5071**

IN COURT OF APPEALS
DISTRICT I

---

BANK OF AMERICA, N.A.,

PLAINTIFF-RESPONDENT,

V.

JEAN-PIERRE C. RIFFARD,

DEFENDANT-APPELLANT.

---

APPEAL from judgments of the circuit court for Milwaukee County: KASHOUA KRISTY YANG, Judge. *Reversed and cause remanded with directions*.

Before White, C.J., Geenen and Colón, JJ.

¶1 WHITE, C.J. Jean-Pierre C. Riffard appeals from the judgments entered in favor of Bank of America, N.A. for two defaulted open-end credit card accounts for a combined amount of $24,352.91. Riffard argues that these

judgments could not be made in Bank of America's favor because it failed to comply with the procedural notice requirements of the Wisconsin Consumer Act (WCA), WIS. STAT. §§ 425.103-.105 (2021-22),[1] to bring a collection action. Bank of America argues that the National Bank Act (NBA), 12 U.S.C. § 25b, preempts the procedural notice requirements of the WCA; therefore, the judgments were properly made. We conclude that the NBA does not preempt the procedural notice requirements of the WCA. As a result, Bank of America was not entitled to judgments in its favor. Therefore, we reverse the judgments and remand this matter to the circuit court with directions to dismiss the actions.

## BACKGROUND

¶2 We recite from the parties' stipulation of findings of facts to the circuit court. Riffard applied for and was issued two separate credit card accounts from Bank of America. Riffard received statements on these accounts at an address in Milwaukee. Riffard defaulted on his obligation to make monthly payments on his accounts.

¶3 In August 2021, Bank of America filed a small claims action in Milwaukee County Circuit Court case No. 2021SC19448 for an unpaid balance of $7,140.56. Bank of America also filed an action for relief in Milwaukee County Circuit Court case No. 2021CV5071, seeking an unpaid balance of $17,212.35. Combined, the total unpaid balance from both accounts is $24,352.91. Relevant to this appeal, the complaint in case No. 2021CV5071, alleged that "[a]ny notices to cure default which plaintiff is required to issue to defendant have been so issued,

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

defendant has failed to cure the default and the plaintiff has declared the entire balance due in full."

¶4 In answer to the complaint, Riffard filed affirmative defenses alleging, among other things, that: (1) Bank of America failed to state a claim upon which relief may be granted; (2) Bank of America's allegation that it sent the required Notice of Right to Cure Default was false because Bank of America did not send a Notice of Right to Cure Default in violation of WIS. STAT. § 425.104, and that Bank of America knew that this material allegation was false at the time it filed the action; and (3) Bank of America's failure to send a Notice of Right to Cure Default violated the WCA, which meant this action was barred.[2]

¶5 In September 2021, Riffard filed a motion to dismiss with prejudice Bank of America's complaint in case No. 2021CV5071 for failure to state a claim upon which relief may be granted and for violation of the WCA. In Riffard's supporting affidavit, he submitted an excerpt from his TransUnion credit report alleging that one account had been closed by Bank of America and charged off in February 2020, and he submitted an excerpt from an Experian credit report alleging that the other account had been closed by Bank of America and charged off in July 2020. Riffard filed an amended motion to dismiss, to which he attached a second affidavit attesting that he had not received any of the written notices required by the WCA or a statutorily-compliant Notice of Right to Cure

---

[2] Riffard also alleged additional affirmative defenses that we do not discuss because they are not relevant to this appeal. The defenses included Bank of America failed to comply with pleading requirements in WIS. STAT. § 425.109 and Bank of America's debt collection law firm engaged in prohibited debt collection practices and unconscionable conduct in violation of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692(e).

Default as required by WIS. STAT. § 425.104 before a creditor may file a collection action.

¶6      In September 2021, Riffard filed an answer and affirmative defense in small claims case No. 2021SC19448 arguing the same grounds to dismiss with prejudice as he alleged in his answer to No. 2021CV5071. Riffard moved to consolidate the two cases, which was granted by the circuit court in December 2021.

¶7      In January 2022, in response to Riffard's motion to dismiss No. 2021CV5071, Bank of America argued that (1) it had stated a claim; (2) the Notice of Right to Cure Default provision in the WCA was preempted by the NBA; and (3) if the notice provision requirement in the WCA had applied, the appropriate remedy was dismissal without prejudice—not with prejudice, as Riffard moved.

¶8      After a hearing in January 2022 before the circuit court, Riffard was granted permission to file an amended motion to dismiss for both cases, which he filed in February 2022. Bank of America then filed an amended brief opposing Riffard's motion to dismiss the consolidated action.

¶9      In March 2022, the circuit court denied Riffard's motion to dismiss. The circuit court concluded that regulations promulgated under the NBA preempted the WCA's procedural notice requirements. *See* 12 U.S.C. § 25b; 12 C.F.R. § 7.4008(d)-(e); WIS. STAT. §§ 425.104-.105. The court found that the WCA procedural notice requirement limited the creditor's "ability to modify the terms of the credit because once the borrower cures a default, the borrower's rights under the agreement are restored as if no default had occurred." The court concluded this put the WCA's requirement of a Notice of Right to Cure Default in

conflict with the NBA's preemption over state law limitations concerning the terms of credit. 12 C.F.R. § 7.4008(d). In April 2022, this court denied Riffard's motion for an interlocutory appeal of the circuit court's decision to deny his motion to dismiss.

¶10 In December 2022, the parties stipulated to findings of fact, which were recited above. The circuit court then issued findings of fact and conclusions of law. The court determined that Riffard's failure to make payments breached the contract with Bank of America for the credit card accounts. The court stated that Bank of America performed all conditions precedent to filing the action, and the court concluded that Bank of America was entitled to judgments in the amount of $24,352.91 plus costs and interest from the date of judgments.

¶11 Riffard now appeals.

## DISCUSSION

¶12 Riffard argues that the NBA does not preempt the WCA's procedural notice requirements to bring an action to collect on his defaulted credit card accounts. Riffard asserts that Bank of America's failure to provide a Notice of Right to Cure Default under the WCA requires the dismissal of this action and that the circuit court erred when it granted judgment in Bank of America's favor. Bank of America argues that the circuit court properly concluded that the NBA preempted the WCA on this issue. This is an issue of first impression under Wisconsin law. We conclude that preemption does not apply. To understand how we reached our result, we must examine the WCA, the NBA, and preemption.

¶13 "To determine whether a state statute conflicts with a federal law, we first interpret the laws and then determine whether they conflict." ***Milwaukee***

*City Hous. Auth. v. Cobb*, 2015 WI 27, ¶14, 361 Wis. 2d 359, 860 N.W.2d 267. "[W]hether federal preemption applies is a question of federal law that we review independently." *Blunt v. Medtronic, Inc.*, 2009 WI 16, ¶13, 315 Wis. 2d 612, 760 N.W.2d 396.

### I. The WCA

¶14 We begin with the WCA as it applies to a creditor pursuing an action for an unpaid credit card account. In order for a creditor to file an "action with respect to the obligation of a customer in a consumer credit transaction," the customer must be in default and the creditor must comply with procedural directives, both as defined in the WCA. WIS. STAT. §§ 425.103(1), (2)(b), 425.104. A customer in "an open-end plan," such as a credit card account, is in default when the customer has "fail[ed] to pay when due on [two] occasions within any [twelve]-month period[.]" Sec. 425.103(2)(b).

¶15 If a customer is in default and the customer has a right to cure the default, the creditor may not bring an action unless it gives a Notice of Right to Cure Default,[3] and then only upon the expiration of fifteen days of giving the

---

[3] The notice must include:

> [T]he name, address and telephone number of the creditor, a brief identification of the consumer credit transaction, a statement of the nature of the alleged default and a clear statement of the total payment, including an itemization of any delinquency charges, or other performance necessary to cure the alleged default, the exact date by which the amount must be paid or performance tendered and the name, address and telephone number of the person to whom any payment must be made, if other than the creditor.

WIS. STAT. § 425.104(2).

notice. WIS. STAT. §§ 425.104(1), .105(1)-(2); ***Johnson v. LVNV Funding***, No. /13-C-1191, 2016 WL 676401, at \*3-4 (E.D. Wis. Feb. 18, 2016). A customer in default may cure the default "by tendering the amount of all unpaid installments due at the time of the tender, without acceleration, plus any unpaid delinquency or deferral charges, and by tendering performance necessary to cure any default other than nonpayment of amounts due." Sec. 425.105(2).

¶16 A customer does not have a right to cure—thus a Notice of Right to Cure Default is not required to be given for a creditor to bring an action—if twice in the preceding twelve months, "[t]he customer was in default on the same transaction or open-end credit plan"; the creditor complied with WIS. STAT. § 425.104 to give the customer a Notice of Right to Cure Default for the previous default; and "[t]he customer cured the previous default." WIS. STAT. § 425.105(3); ***Rosendale State Bank v. Schultz***, 123 Wis. 2d 195, 198, 365 N.W.2d 911 (Ct. App. 1985) (holding that a right to cure was not available—and no Notice of Right to Cure Default was required—when the customer defaulted on the entire obligation and not an installment payment); ***Bahena v. Jefferson Cap. Sys., LLC***, 363 F. Supp. 3d 914, 921 (W.D. Wis. 2019); ***Beal v. Wyndham Vacation Resorts, Inc.***, 956 F. Supp. 2d 962, 969-70 (W.D. Wis. 2013).

¶17 If a creditor does not comply with the WCA's procedural requirements, which include providing a Notice of Right to Cure Default when necessary and the pleadings requirements in WIS. STAT. § 425.109, the creditor may not bring an action against the customer. ***Security Fin. v. Kirsch***, 2019 WI 42, ¶18, 386 Wis. 2d 388, 926 N.W.2d 167. If the creditor brings an action in violation of the WCA, the circuit court then dismisses the action without

prejudice.[4]  *Id.*, ¶¶16, 18 ("The WCA statutes provide no other provision entitling this debtor to relief, other than that of dismissal of an improperly filed complaint."); *Newgard ex rel. Newgard v. Bank of Am.*, 2007 WI App 161, ¶14, 303 Wis. 2d 466, 735 N.W.2d 578.

¶18    Applying only the WCA to the facts of this case, the appropriate result in the circuit court would have been dismissal without prejudice.  *Security Fin.*, 386 Wis. 2d 388, ¶18.[5]  It is undisputed that Riffard was in default on his credit card accounts and the record reflects that Bank of America did not provide the Notice of Right to Cure Default.[6]  Bank of America did not assert that Riffard was not entitled to a Notice of Right to Cure Default, pursuant to WIS. STAT. § 425.105(3).

### II.    *The NBA and preemption*

¶19    We now consider the impact of the NBA and preemption of state law.  The authority of a national bank includes that it "may make, sell, purchase,

---

[4]  Several courts have addressed whether other remedies are available for these violations, with the general consensus stating dismissal was the remedy.  *Security Fin. v. Kirsch*, 2019 WI 42, ¶16 & n.6, 386 Wis. 2d 388, 926 N.W.2d 167 (holding that there is no other remedy "than that of dismissal" under WIS. STAT. § 427.104 for failing to comply with WCA pleading requirements under WIS. STAT. § 425.109).

[5]  We generally interpret the dismissal for failing to comply with the procedural requirements of the WCA to be a dismissal without prejudice; however, that question must be determined by the circuit court upon remand.  *See Haselow v. Gauthier*, 212 Wis. 2d 580, 591, 569 N.W.2d 97 (Ct. App. 1997) (providing that the dismissal with prejudice determination is within the circuit court's discretion; however, "dismissal with prejudice is a drastic sanction, a court should dismiss a case only on finding egregious conduct or bad faith.").  We note that Riffard requests this court reverse and remand for further proceedings.

[6]  Although Bank of America's original pleadings asserted that it had provided all required notices, the record does not reflect that it sent a Notice of Right to Cure Default, and rather than argue that it provided the required notice, Bank of America instead argues on appeal that the procedural notice requirement of notice was preempted by federal law.

participate in, or otherwise deal in loans and interests in loans that are not secured by liens on, or interests in, real estate, subject to such terms, conditions, and limitations prescribed by the Comptroller of the Currency [(OCC)] and any other applicable Federal law." 12 C.F.R. § 7.4008(a).[7] The United States Supreme Court examined federal regulation of national banks and the express preemption of "some (but not all) state laws that regulate national banks." *Cantero v. Bank of Am., N. A.*, 602 U.S. 205, 209 (2024). The NBA "preempts a state law 'only if' the state law (i) discriminates against national banks as compared to state banks; or (ii) 'prevents or significantly interferes with the exercise by the national bank of its powers,' as determined 'in accordance with the legal standard for preemption'" in *Barnett Bank of Marion County, N. A. v. Nelson*, 517 U.S. 25 (1996).[8] *Cantero*, 602 U.S. at 213-14 (quoting 12 U.S.C. §§ 25b(b)(1)(A), (B)).

¶20 The related regulations address the application and preemption of state law. National banks "may make non-real estate loans without regard to state law limitations" regarding certain banking acts including, as relevant here:

> The terms of credit, including the schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan[.]

---

[7] The Office of the Comptroller of the Currency is referred to as the OCC. 12 U.S.C. § 1.

[8] Although the NBA has existed in some form since 1863, we address the current version of the NBA created by the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. 111-203, 124 Stat. 1376. *Cantero v. Bank of Am., N. A.*, 602 U.S. 205, 209-10 (2024) ("The national banking system began in 1863 when Treasury Secretary (later Chief Justice) Salmon Chase proposed, Congress passed, and President Lincoln signed the National Bank Act. 12 Stat. 665; 13 Stat. 99.").

12 C.F.R. § 7.4008(d)(4).[9] State laws are not preempted on certain subjects that "are not inconsistent with the non-real estate lending powers of national banks and apply to national banks to the extent consistent with the decision" in ***Barnett Bank***. 12 C.F.R. § 7.4008(e). The subjects included in non-preemption include state laws on the "[r]ights to collect debts[.]" 12 C.F.R. § 7.4008(e)(4).

¶21 The Supreme Court's analysis of the preemption of state banking laws stated that "[a] court applying that ***Barnett Bank*** standard must make a practical assessment of the nature and degree of the interference caused by a state law." ***Cantero***, 602 U.S. at 219-20. "If the state law prevents or significantly interferes with the national bank's exercise of its powers, the law is preempted. If the state law does not prevent or significantly interfere with the national bank's exercise of its powers, the law is not preempted." ***Id.*** at 220.

¶22 We turn to ***Barnett Bank***, in which the question was "whether a federal statute that permits national banks to sell insurance in small towns pre-empts a [Florida] state statute that forbids them to do so." ***Id.***, 517 U.S. at 27. The Supreme Court held that the Florida law was preempted because the federal statute expressly granted "a national bank an authorization, permission, or power" to sell insurance, without any indication "that Congress intended to subject that power to a local restriction." ***Id.*** at 34-35.

¶23 In reaching that conclusion, the Supreme Court discussed the reasoning of several prior decisions that led to ***Barnett Bank***. The Supreme Court first discussed ***Franklin National Bank of Franklin Square v. People***, 347 U.S.

---

[9] We note that "[f]ederal regulations have no less preemptive effect than federal statutes." ***Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta***, 458 U.S. 141, 153 (1982).

373, 374 (1954). In *Franklin National Bank*, the Supreme Court concluded that "federal statutes which authorize national banks to receive savings deposits conflict with New York legislation which prohibits them from using the word 'saving' or 'savings' in their advertising or business" and that the New York law must yield. *Id.* The issue arose not from the national bank's ability to receive savings deposits, which New York allowed, but only prohibited the national bank from advertising using the word "savings." *Id.* at 378. The Supreme Court concluded that "the New York law significantly interfered with the banks' power because the banks could not advertise effectively" using the descriptive terminology selected by Congress. *Cantero*, 602 U.S. at 216 (discussing *Franklin Nat'l Bank*).

¶24 *Barnett Bank* also analyzed *Fidelity Federal Savings & Loan Association v. de la Cuesta*, 458 U.S. 141 (1982). The Supreme Court there held that a Federal Home Loan Bank Board regulation allowing for "due-on-sale" clauses to be included in mortgage lending preempted a California law that prohibited them. *Id.* at 167-68, 170. Although it was not physically impossible for a national lender to comply with the federal and state law—only because the federal law was optional—the Supreme Court did not consider the possibility to be dispositive. *Id.* at 155. The Board's regulations expressly stated an intent that the due-on-sale practices were governed exclusively by federal law and were not bound by limitations provided in state law. *Id.* at 158-59. "Congress invested the Board with broad authority to regulate federal savings and loans so as to effect the statute's purposes, and plainly indicated that the Board need not feel bound by existing state law." *Id.* at 162.

¶25 *Barnett Bank* also examined cases where state law was not preempted. For example, the Supreme Court ruled that a Kentucky state banking

law that determined when inactive banking accounts would be "deemed presumptively abandoned, and their surrender to the state compelled" was not preempted by national banking laws. *Anderson Nat'l Bank v. Luckett*, 321 U.S. 233, 243 (1944). The Supreme Court concluded, "[f]or an inseparable incident of a national bank's privilege of receiving deposits is its obligation to pay them to the persons entitled to demand payment according to the law of the state where it does business." *Id.* at 248-49. The Supreme Court held that the Kentucky law did "not infringe or interfere with any authorized function of the bank"; therefore, the Kentucky law was not preempted. *Id.* at 249.

¶26 The Supreme Court's analysis in *Barnett Bank* also included *First National Bank v. Kentucky*, 76 U.S. 353 (1869). There, the Supreme Court concluded that a Kentucky law that taxed the shareholders of all banks did not hinder national bank operations and therefore, the state law was not preempted by national banking laws. *Id.* at 362. The Supreme Court held that national banks are "subject to the laws of the State, and are governed in their daily course of business far more by the laws of the State than of the nation." *Id.* The Supreme Court held that all of the national banks' contracts are "governed and construed by State laws. Their acquisition and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on State law." *Id.* It concluded that "only when the State law incapacitates the banks from discharging their duties to the government that it becomes unconstitutional." *Id.*

### III. Preemption analysis

¶27 With the ***Barnett Bank*** preemption analysis in mind, we must determine whether the WCA's notice requirement for as a condition of debt collection interferes with a national bank's power and duties.[10] Bank of America argues that the NBA preempts the Notice of Right to Cure Default provision of the WCA, WIS. STAT. §§ 425.103-.105. Although the impact of the WCA notice provision has been examined by multiple federal and state courts, at this point, there is no mandatory authority answering this question. *Compare **Boerner v. LVNV Funding LLC***, 358 F. Supp. 3d 767, 776-77 (E.D. Wis. 2019) (holding that the NBA does not preempt the procedural requirements of §§ 425.103-.105 to bring an action) with ***Lako v. Portfolio Recovery Assocs.***, No. 20-CV-355-WMC, 2021 WL 3403632, at *7 (W.D. Wis. Aug. 4, 2021) (concluding that WIS. STAT. §§ 425.104-.105 are preempted by the NBA because they exceed "a simple notice requirement" and affect "the *terms* of credit itself" (alteration in original)).

¶28 Our review requires us to consider both Wisconsin statutes and federal regulations. "We apply general principles of statutory interpretation when construing federal regulations." ***Voces De La Frontera, Inc. v. Clarke***, 2017 WI 16, ¶13, 373 Wis. 2d 348, 891 N.W.2d 803. In our review, "[s]tatutory language is given its common, ordinary, and accepted meaning[.]" ***State ex rel. Kalal v. Circuit Ct. for Dane Cnty.***, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.

---

[10] A preemption inquiry generally begins with the question of whether the federal law fully occupied the field with its actions. Under the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, field preemption was ruled out by 12 U.S.C. § 25b(b)(4) (federal banking law "does not occupy the field in any area of State law"). ***Cantero***, 602 U.S. at 213. There have also been no arguments made that the WCA has "a discriminatory effect on national banks, in comparison with the effect of the law on a bank chartered by that State[.]" 12 U.S.C. § 25b(1)(A). Therefore, we address these two issues no further.

We are not "guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51 (1987) (citations and quotation marks omitted).

¶29     In a preemption analysis, the reviewing court must "read a statute or regulation in its entirety" and when applied, as occurs here, the court must "consider both the express preemption and savings clauses together." *Aguayo v. U.S. Bank*, 653 F.3d 912, 922 (9th Cir. 2011).  Further, the reviewing court "must presume that Congress did not intend to pre-empt areas of traditional state regulation." *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 740, (1985).

¶30     First, we address whether the state and federal laws are in irreconcilable conflict or whether it would be a physical impossibility to apply both laws.  The WCA has certain procedural requirements that must be fulfilled before a creditor can pursue an action against a defaulting customer.  WIS. STAT. §§ 425.103-.105.  It "provides procedural protections that apply regardless of the legal theory of the underlying claim." *Newgard*, 303 Wis. 2d 466, ¶13.  The NBA preempts state laws on "[t]he terms of credit, including the schedule for repayment of principal and interest ... or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan," 12 C.F.R. § 7.4008(d)(4); however, the NBA's savings provision specifically does not preempt state laws on "[r]ights to collect debts," 12 C.F.R. § 7.4008(e)(4).  We conclude that the WCA and the NBA preemption and savings clause provisions laws do not impose directly conflicting duties on a national bank. *Barnett Bank*, 517 U.S. at 31.  The notice requirement in the WCA only arises when a creditor wants to file an action in state court to collect a defaulted debt.

¶31     Next, we consider whether the WCA "significantly interferes with the exercise by the national bank of its powers[.]" 12 U.S.C. § 25b(b)(1)(B). "A court applying that ***Barnett Bank*** standard must make a practical assessment of the nature and degree of the interference caused by a state law." ***Cantero***, 602 U.S. at 219-20. "[D]ebt collection … has deep roots in common law and remains a fixture of state, not federal, law." ***Aguayo***, 653 F.3d at 923. Debt collection occurs within the state law framework. ***First Nat'l Bank***, 76 U.S. at 362 (concluding that national banks are "governed in their daily course of business … by the laws of the State"; national banks' contracts are "governed and construed by State laws"; national banks' "right to collect their debts … are all based on State law"). Further, consumer protection laws, such as the WCA, "fall in an area that is traditionally within the state's police powers to protect its own citizens." ***Aguayo***, 653 F.3d at 917.

¶32     The federal preemption regulation at issue here, 12 C.F.R. § 7.4008, was promulgated by the OCC. *See* Bank Activities and Operations; Real Estate Lending and Appraisals, 69 Fed. Reg. 1904, 1916 (Jan 13. 2004) (codified at 12 C.F.R. pts. 7 & 34; *see also* ***Aguayo***, 653 F.3d at 919.[11] The types of state laws that are not preempted "typically do not regulate the manner or content of the business of banking authorized for national banks, but rather establish the legal infrastructure that makes practicable the conduct of that business." Bank Activities and Operations, 69 Fed. Reg. at 1913.

---

[11] We note these regulations were amended in Dodd-Frank. *See* Office of Thrift Supervision Integration; Dodd-Frank Act Implementation, 76 Fed. Reg. 43, 549, 43,565 (July 21, 2011) (to be codified at 12 C.F.R. § 7.4008). The amendments do not affect the substance of our analysis.

¶33 The WCA's Notice of Right to Cure Default is an application of the State's police powers to protect consumers. It does not affect the credit card lending operations or terms of credit of a national bank. It only comes into play when any creditor (not just a national bank) wants to use the state court system to file an action to collect on a debt defaulted by a Wisconsin consumer. The WCA's notice requirement at most "incidentally affects a national bank's [f]ederally authorized powers[.]" *See* *id.*

¶34 A Fourth Circuit case, ***Epps v. JP Morgan Chase Bank, N.A.***, 675 F. 3d 315, 322 (4th Cir. 2012), in which the court concluded that preemption did not apply, shows a striking resemblance to the WCA requirements. In ***Epps***, a national bank complained about unique repossession disclosure requirements under the Code of Maryland Regulations. *Brief of Appellee* at \*3-4, ***Epps v. JP Morgan Chase Bank, N.A.***, 2011 WL 2167896. The regulations stated that if a creditor failed to deliver a required disclosure, the creditor may not be entitled to a deficiency judgment, but could only collect the principle amount of the loan without interest and fees, and may also be liable for treble damages. MD. CODE ANN., COM. LAW §§ 12-1021(k)(4), 12-1018(a)(2), (b).[12]

¶35 The Fourth Circuit held that the national bank's reasoning was flawed because the regulations at issue did not "directly condition any power expressly granted to a national bank by Congress." ***Epps***, 675 F. 3d at 323. Under

---

[12] We note that among the national bank's arguments in ***Epps v. JP Morgan Chase Bank, N.A.***, 675 F.3d 315 (4th Cir. 2012), was the depth and breadth of information the creditor must disclose. For example, a repossessing creditor was required to provide a notice to a customer with the exact location of repossessed tangible personal property and the purchaser's name and address in the case of a private sale. MD. CODE ANN., COM. LAW §§ 12-1021(e)(3), (j)(2)(vii)-(ix).

the Maryland law, repossession was only permitted if the creditor complied with certain notice requirements, which the court determined were "conditions of repossession only—a power granted to Chase pursuant to state law, not the NBA." *Id.* Although the Maryland law regulated an area with authorized federal presence by "regulating the authority of a national bank to collect a deficiency judgment following default on a loan, … the degree to which the [Maryland law] regulates an enumerated power of the national banks is merely incidental." *Id.* at 322. Therefore, the Fourth Circuit concluded there was no express preemption by 12 C.F.R. § 7.4008(d). *Epps*, 675 F.3d at 323.

¶36 We acknowledge our disagreement with a federal district case that concluded that the WCA's Notice of Right to Cure Default requirement impeded on a national bank's right to set the "terms of credit." *Lako*, 2021 WL 3403632, at *6; 12 C.F.R. § 7.4008(d)(4).[13] The district court concluded that the WCA "goes beyond debt collection and sets conditions on the lending relationship between the creditor and the borrower." *Lako*, 2021 WL 3403632, at *6. It concluded that the notice requirement precluded the creditor from collecting the debt, precluded the creditor from accelerating the maturity of the loan, and allowed the customer to

---

[13] We note that Bank of America urges us to consider the role of a Wisconsin Department of Financial Institution (DFI) guidance letter that states that the WCA notice requirement is preempted by the NBA. The *Lako* decision described this as a 2018 DFI letter concluding that "the notice requirements of WIS. STAT. §§ 425.104 and 425.105 *are* federally preempted as applied to national banks." *Lako v. Portfolio Recovery Assocs.*, No. 20-CV-355-WMC, 2021 WL 3403632, at *5 (W.D. Wis. Aug. 4, 2021) (alteration in *Lako*). The *Lako* court also noted that the DFI letter is not binding on a federal court. *Id.* However, the appellate record in the instant case does not contain a copy of this guidance; therefore, its relevance outside of the specific situation in the letter is unclear and the DFI's reasoning for this legal conclusion is unknown. Even if the letter were before us, this court independently reviews "an administrative agency's conclusions of law[.]" *Tetra Tech EC, Inc. v. DOR*, 2018 WI 75, ¶84, 382 Wis. 2d 496, 914 N.W.2d 21. We therefore are not persuaded that the DFI letter affects our analysis.

cure the default and restore to a position as if the default had not occurred. *Id.* at *7.

¶37 We disagree with the *Lako* analysis and we conclude that the WCA does not interfere with a national bank's power and authority under the NBA, and further, the WCA notice requirement is not preempted, but instead the savings clause applies. 12 C.F.R. § 7.4008(e). The WCA's notice requirement does not exceed the State's governance of debt collection and its conditions to bring an action in state court. It does not condition the lending relationship between a national bank and its customer. Similar to the Maryland regulations examined in *Epps*, the WCA's notice requirements "are only triggered when a creditor is attempting to collect on a debt, not by the establishment of the lending relationship or the creditor's decision to make the loan." *Epps*, 675 F.3d at 325. It does not interfere with a national bank's enumerated authority and powers. 12 C.F.R. § 7.4008(a). The WCA notice requirement only arises when the national bank wants to pursue a defaulted debt in state court. The WCA confines itself to the traditional state control over the collection of debt and consumer protection. *Aguayo*, 653 F.3d at 923, 927-28; *First Nat'l Bank*, 76 U.S. at 362. Therefore, we conclude that the WCA notice requirements are not preempted by the NBA.

## CONCLUSION

¶38 Because we conclude that the NBA has not preempted the WCA's notice requirements and the undisputed facts show that Bank of America did not comply with the WCA's Notice of Right to Cure Default requirement to bring the underlying actions here, Bank of America has been improperly granted judgment on Riffard's defaulted credit card accounts. *See Security Fin.*, 386 Wis. 2d 388, ¶16 ("The WCA statutes provide no other provision entitling this debtor to relief,

other than that of dismissal of an improperly filed complaint."). We therefore reverse the judgments and remand with directions for the circuit court to dismiss Bank of America's actions against Riffard.[14]

> *By the Court.*—Judgments reversed and cause remanded with directions.

Recommended for publication in the official reports.

---

[14] As noted above, we leave to the circuit court's discretion to determine whether to dismiss the action with or without prejudice on remand.