*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2018 UT 58**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

BANK OF AMERICA, N.A.,
*Appellant,*

*v.*

LORAINE SUNDQUIST and JOHN DOE/JANE DOE/
OCCUPANT DOUG KAHLER, an individual,
*Appellees.*

No. 20170014
Filed October 5, 2018

On Direct Appeal

Third District, Salt Lake
The Honorable Judge Bruce C. Lubeck
No. 110408730 EV

Attorneys:

Daniel S. Volchok, Washington, D.C., Brian E. Pumphrey,
Richmond, VA, Robert H. Scott, Salt Lake City, for appellant

Tyler Ayers, Draper, J. Kent Holland, Sandy,
Scott C. Borison, Frederick, MD, for appellees

JUSTICE PEARCE authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PETERSEN joined.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶ 1 Location, location, location are, at least according to Lord Harold Samuel, the three things that matter most in real estate. Location is also the thing that matters the most in this case. The National Bank Act authorizes a national bank to perform certain fiduciary functions if the law of the state where the national bank is located permits competing entities to engage in those activities. In 2013, a majority of this Court opined that the word "located" was

unambiguous. With the benefit of more focused briefing we conclude that, as used in the Act, located lends itself to at least two plausible meanings. Because we find Congress's use of the word ambiguous, we must defer to the "not unreasonable" interpretation the Comptroller of the Currency has assigned to the word located. Applying that definition, we overturn the decision we reached when this case was before us on interlocutory review. We reverse and remand for further proceedings.

## BACKGROUND

¶ 2   Loraine Sundquist purchased a home in Utah. At the time of the purchase, she executed a deed of trust, in Utah, naming Mortgage Electronic Registration Systems, Inc. (MERS) as beneficiary. The deed of trust named an attorney as trustee. ReconTrust Company, N.A. (ReconTrust) later replaced the attorney as trustee.

¶ 3   Sundquist fell behind on her payments. ReconTrust elected to sell the property. The beneficial interests were then assigned to the Federal National Mortgage Association (FNMA). ReconTrust, acting as the trustee on the deed, auctioned the property. Bank of America, which later acquired FNMA's interest in the property, asserts that ReconTrust was located in Texas while it acted as the trustee.[1] FNMA won the auction and ReconTrust conveyed the property to FNMA.

¶ 4   After the sale, Sundquist refused to leave. FNMA brought this action, seeking an order forcing Sundquist from her home. FNMA also asked for damages allegedly arising out of her decision to stay in the property after it had been sold. The district court entered an eviction order.

¶ 5   Sundquist petitioned for interlocutory review. We granted the petition, which we resolved in *Federal National Mortgage Ass'n v. Sundquist (Sundquist I)*, 2013 UT 45, 311 P.3d 1004. In that case, Sundquist asserted that the sale was invalid because Utah law does not permit a bank to act as a trustee on a trust deed. *Id.* ¶ 8. FNMA countered that Texas law permitted ReconTrust to serve as the

---

[1] ReconTrust executed the notice of default and election to sell in Texas. The substitution of trustee and trustee's deed were also executed in Texas.

trustee and that under the National Bank Act, Texas law applied. *Id.* ¶ 9.

¶ 6 The outcome of the case rose and fell on the question of whether Utah law applied. Under Utah law, only certain people and entities can serve as a trustee of a trust deed—for example, active attorneys and title insurance companies. *See* UTAH CODE §§ 57-1-21, – 23.[2] A bank, like ReconTrust, may not. In contrast, ReconTrust argued that Texas law would have permitted ReconTrust to be the trustee and oversee the property's sale. *Sundquist I*, 2013 UT 45, ¶ 9.

¶ 7 The relevant portion of the National Bank Act reads:

(a) Authority of Comptroller of the Currency

The Comptroller of the Currency shall be authorized and empowered to grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as

---

[2] Utah Code section 57-1-21 provides that:

(1)(a) The trustee of a trust deed shall be:

(i) any individual who is an active member of the Utah State Bar, or any entity in good standing that is organized to provide licensed professional legal services and employs an active member of the Utah State Bar, if [certain conditions are met];

(ii) any depository institution as defined in Section 7-1-103, or insurance company authorized to do business and actually doing business in Utah under the laws of Utah or the United States;

(iii) any corporation authorized to conduct a trust business and actually conducting a trust business in Utah under the laws of Utah or the United States;

(iv) any title insurance company or agency that [meets certain qualifications];

(v) any agency of the United States government; or

(vi) any association or corporation that is licensed, chartered, or regulated by the Farm Credit Administration or its successor.

trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, or in any other fiduciary capacity in which State banks, trust companies, *or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located.*

(b) Grant and exercise of powers deemed not in contravention of State or local law

Whenever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of State or local law within the meaning of this section.

12 U.S.C. § 92a(a)–(b) (emphasis added).

¶ 8   The central inquiry became, therefore, whether corporations were permitted to serve as trustees of trust deeds "under the laws of the State in which [ReconTrust] [was] located." *Id.* § 92a(a). And this required us to determine where ReconTrust was located. To suss out the meaning of located, we consulted the Merriam-Webster online dictionary. *Sundquist I*, 2013 UT 45, ¶ 23. We relied on its definition of locate to conclude that the statutory language was unambiguous and that "a national bank is located in the place or places where it acts or conducts business." *Id.*

¶ 9   We also decided that even if the statute's plain language was not clear, two different canons of statutory construction would dictate that Utah law applied. *Id.* ¶ 30.  The first canon provides that when Congress delegates authority to agencies to make significant decisions, it does so clearly and explicitly. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159–61 (2000). The second canon provides that we will not find that Congress has intruded into traditional areas of state law unless Congress does so explicitly. *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991).

¶ 10 We opined that both of these canons suggested that Congress did not intend to dictate what law would apply to a foreclosure action. We concluded that real property is a matter of "intensely local concern." *Sundquist I*, 2013 UT 45, ¶ 37. And, because "a clear statement of an intent to permit the laws of a foreign state to regulate the manner and mode of a foreclosure sale in another state should be required," Utah law governed that matter. *Id.* We also

concluded that the "matter of authorizing one state to regulate non-judicial sales for the foreclosure of real property in another state would be monumental—hardly the sort of interstitial administrative detail that Congress would likely leave for an agency." *Id.* ¶ 38.

¶ 11 Because we concluded the statute was unambiguous, we had no need to address whether under *Chevron, U.S.A., Inc. v. National Resource Defense Council, Inc.*, 467 U.S. 837 (1984), we were required to defer to the agency's interpretation. *Sundquist I*, 2013 UT 45, ¶¶ 39–40. In relevant part, the regulation provides:

> For each fiduciary relationship, the state referred to in section 92a is the state in which the bank acts in a fiduciary capacity for that relationship. A national bank acts in a fiduciary capacity in the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets.

We nevertheless examined the Comptroller's interpretation of the statute and decided that the regulation was unreasonable. We reasoned that:

> [T]here is nothing in the statute itself that ascribes any particular significance of these three particular acts, while rendering other acts undertaken by the bank irrelevant. Moreover, the three activities identified in the regulation could theoretically be performed in any location without regard to the location of the trust property, thereby allowing national banks to dictate the applicable law.

*Id.* ¶ 42.

¶ 12 Ultimately, we concluded that "[a] state bank which seeks to foreclose on real property in Utah must comply with Utah law. A federally chartered "bank" which seeks to foreclose on such property must comply with Utah law as well." *Id.* ¶ 51 (alteration in original) (citation omitted).

¶ 13 After our decision, FNMA petitioned for certiorari to the United States Supreme Court. The court called for briefing from the Solicitor General. Although sharply disagreeing with our opinion— and our conclusion that located was an unambiguous term—the Solicitor General suggested that the Court deny certiorari because, in part, our decision was not final. Brief for the United States as Amicus Curiae at 1, 7–11, 16, *Federal Nat'l Mortg. Ass'n v. Sundquist (Sundquist*

*II)*, 134 S. Ct. 475 (2014) (No. 13-852), 2014 WL 4979386, at *8–12, *16. The Court then denied certiorari. *Sundquist II*, 134 S. Ct. 475.

¶ 14 FNMA transferred its interest in the property to Bank of America through a quitclaim deed. The district court quieted title in favor of Sundquist. Bank of America appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 15 To decide this appeal, we must determine what the National Bank Act means by the term "located" in 12 U.S.C. section 92a(a). "We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 12, 267 P.3d 863 (citation omitted).

## ANALYSIS

### I. Exceptional Circumstances Permit Us to Revisit *Sundquist I*

¶ 16 Before we reach the merits of the underlying dispute, we must confront a threshold question: does our decision in *Sundquist I* bind our hands in this matter. Sundquist argues that under the law of the case doctrine, *Sundquist I* both begins and ends our analysis.

> Under [the law of the case doctrine], a court is justified in refusing to reconsider matters it resolved in a prior ruling in the same case for reasons of efficiency and consistency. . . . The exceptional circumstances under which courts have reopened issues previously decided are narrowly defined: (1) when there has been an intervening change of controlling authority; (2) when new evidence has become available; or (3) when the court is convinced that its prior decision was clearly erroneous and would work a manifest injustice.

*Thurston v. Box Elder Cty.*, 892 P.2d 1034, 1038–39 (Utah 1995).

¶ 17 Bank of America acknowledges the doctrine's pull, but urges us to reopen *Sundquist I* under the third consideration: "when the court is convinced that its prior decision was clearly erroneous and would work a manifest injustice." *Id.* at 1039.

¶ 18 We are not immune from the effects of our decisions. And we are generally bound by our prior decisions in the same case. *Gildea v. Guardian Title Co. of Utah*, 2001 UT 75, ¶ 9, 31 P.3d 543 ("Under the law of the case doctrine, issues resolved by this court on appeal bind the trial court on remand, and generally bind this court

should the case return on appeal after remand."). However, the law of the case

> doctrine is not a limit on power but, 'as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the practice of courts generally to refuse to reopen what has been decided.'

*Thurston*, 892 P.2d at 1038–39 (quoting *Messenger v. Anderson*, 225 U.S. 436, 444 (1912)). And "this court need not apply the [law of the case] doctrine to promote efficiency at the expense of the greater interest in preventing unjust results or unwise precedent." *Gildea*, 2001 UT 75, ¶ 9 (citation omitted).

¶ 19 This case has afforded us an opportunity to review our prior reasoning, and we are confident that *Sundquist I* was "clearly erroneous." *Thurston*, 892 P.2d at 1039.[3] We had significantly less focused briefing on this issue the last time this case was before us. The last time around, Sundquist's opening brief did not even cite the federal statute at the heart of this appeal, though it did assert that ReconTrust lacked authority to conduct the sale. FNMA's brief, on the other hand, reluctantly discussed the issue of ReconTrust's authority while repeatedly asserting that "the issue is not ripe for appeal" because "[t]he trial court has not made a final determination regarding whether Sundquist's challenge to ReconTrust's authority affects the validity of the trustee's deed."

¶ 20 We now have the benefit of briefing focused on this issue. And that superior briefing causes us to see the need to reconsider our prior decision to correct an erroneous conclusion. Under those circumstances, law of the case presents no barrier.

---

[3] Criticism does not drive our decision to revisit *Sundquist I*. But it is worth noting that our decision was not greeted with universal acclaim. The Tenth Circuit called our opinion "unpersuasive." *Dutcher v. Matheson*, 840 F.3d 1183, 1200-02 (10th Cir. 2016). When asked by the United States Supreme Court to weigh in on whether it should review *Sundquist I*, the Solicitor General argued that our holdings on the lack of ambiguity of the term, the unreasonableness of the statute, and canons of construction were "erroneous." Brief for the United States as Amicus Curiae at 16, *Sundquist II*, 134 S. Ct. 475 (2014) (No. 13-852), 2014 WL 4979386, at *16.

## II. Congress Left Room for the Comptroller to Interpret the Word Located in the National Bank Act

¶ 21 This case presents us with a federal statute and a regulation from the Comptroller of the Currency interpreting that statute. This places us in the shadow of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

¶ 22 *Chevron* requires us to pass through a series of analytical gates. But before we apply *Chevron,* we must first determine whether Congress intended to delegate authority to the Comptroller to weigh in on the issue. If the issue presents a "major question[]" then we presume that Congress would not have left the question to the agency to decide. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000) (citation omitted).

¶ 23 If we determine this is not a major question, but is the type of issue that Congress would delegate to an agency, we then ask if "Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. If the intent of Congress is clear, we "must give effect to the unambiguously expressed intent of Congress." *Id.* at 843. In other words, if Congress's intent is apparent on the face of the statute, we have no need to shop for agency guidance.

¶ 24 If, however, the statute is ambiguous, we look to see if the appropriate agency has weighed in on the statute's meaning. *Id.* at 843–44. ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation."). If it has, and if that interpretation "is based on a permissible construction of the statute." *Chevron* instructs that we must defer to the agency's interpretation. *Id.* at 843.

### A. The Question the National Bank Act Delegates to the Comptroller of the Currency Is Not a "Major" Question

¶ 25 "Deference under *Chevron* to an agency's construction of a statute that it administers is premised on the theory that a statute's ambiguity constitutes an implicit delegation from Congress to the agency to fill in the statutory gaps." *Brown & Williamson*, 529 U.S. at 159. "In extraordinary cases, however, there may be reason to hesitate before concluding that Congress has intended such an implicit delegation." *Id.* at 123. "Congress is more likely to have focused upon, and answered, major questions, while leaving interstitial matters to answer themselves in the course of the statute's daily administration." *Id.* at 154 (citation omitted).

¶ 26 In *MCI Telecommunications Corp. v. American Telephone & Telegraph Co.*, 512 U.S. 218 (1994), the Supreme Court concluded that the Commission's "permissive detariffing policy" was not authorized. *Id.* at 223, 234. "Since an agency's interpretation of a statute is not entitled to deference when it goes beyond the meaning that the statute can bear, the Commission's permissive detariffing policy can be justified only if it makes a less than radical or fundamental change in the Act's tariff-filing requirement." *Id.* at 229 (citations omitted). But the Court reasoned that:

> The tariff-filing requirement is . . . the heart of the common-carrier section of the Communications Act.
> . . .
>
> Much of the rest of the Communications Act subchapter applicable to Common Carriers . . . and the Act's Procedural and Administrative Provisions . . . are premised upon the tariff-filing requirement of § 203. . . . Rate filings are, in fact, the essential characteristic of a rate-regulated industry. It is highly unlikely that Congress would leave the determination of whether an industry will be entirely, or even substantially, rate-regulated to agency discretion—and even more unlikely that it would achieve that through such a subtle device as permission to "modify" rate-filing requirements.

*Id.* at 229–31 (citations omitted). The Court concluded that Congress had not left this decision to the Commission and that therefore the detariffing policy fell outside the Commission's jurisdiction. *Id.* at 234.

¶ 27 *Brown & Williamson* reached the same conclusion about the Food and Drug Administration's (FDA) attempt to regulate cigarettes. 529 U.S. at 161. "[T]he FDA . . . asserted jurisdiction to regulate an industry constituting a significant portion of the American economy." *Id.* at 159. The Court noted that "the FDA contends that, were it to determine that tobacco products provide no 'reasonable assurance of safety,' it would have the authority to ban cigarettes and smokeless tobacco entirely." *Id.* The Court concluded—given the importance of tobacco to the economy and Congress's repeated actions to regulate tobacco separately—"that Congress could not have intended to delegate a decision of such economic and political significance to an agency in so cryptic a fashion." *Id.* at 159–60.

¶ 28 In *Sundquist I*, we determined that the question of which state's law would control was a major question that Congress would not have delegated to an agency. We opined that:

> The matter of authorizing one state to regulate non-judicial sales for the foreclosure of real property in another state would be monumental—hardly the sort of interstitial administrative detail that Congress would likely leave for an agency. Any inference of an intent to leave that to the Comptroller would accordingly require a clear statement of such intent.

*Sundquist I*, 2013 UT 45, ¶ 38, 311 P.3d 1004.

¶ 29 But Congress did make a "clear statement of such intent" when it specifically identified that state law would apply to national banks and that the applicable state law would turn on where the bank is located. *See* 12 U.S.C. § 92a(a) (referring to "the State in which the national bank is located"). Section 92a(a) provides that "[t]he Comptroller of the Currency shall be authorized and empowered to grant" permits for banks to act as trustees in the states in which they are located. Thus, the question delegated to the Comptroller was not whether one state's laws could apply to non-judicial foreclosures in another state; Congress opened the door to that result in the Act. The question left for the Comptroller was how to define "located."

¶ 30 This is not the sort of "radical or fundamental change" that warrants no deference under *Chevron*. *See MCI Telecomms. Corp.*, 512 U.S. at 229. The choice of state law for banks acting in a fiduciary capacity can hardly be described as the "heart" of the Act. *Id.* And other portions of the Act are not "premised" upon where a bank would be located when performing fiduciary functions. *See id.* at 230. Here, unlike the FDA in *Brown & Williamson*, the Comptroller is not asserting the authority to ban an entire segment of the economy. *See Brown & Williamson*, 529 U.S. at 159.

¶ 31 The Comptroller appears to be attempting to give national banks predictability into what law will apply to the transactions they enter. The Comptroller is not, to analogize to *Brown & Williamson*, attempting to foreclose foreclosures.[4] *See id.* at 159–60. Deciding

---

[4] Moreover, as the Comptroller has recognized, the National Banking Act does not modify the substance of state law with respect to how foreclosures operate. The Comptroller has opined that "[the

(continued . . .)

where a national bank is located for the purposes of the National Banking Act and thus which state law to apply—is more of an "interstitial" matter. *Compare id.* at 159. This is simply not the extraordinary case that would cause us to question the delegation to the Comptroller.

### B. The Term Located Is Ambiguous

¶ 32 Next, we must decide if the term located is ambiguous, because "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842–43 (1984).

¶ 33 In *Sundquist I*, we concluded that "the plain meaning of the statute is clear. A national bank is located in those places where it acts or conducts business. And it certainly acts as a trustee in the state in which it liquidates trust assets." 2013 UT 45, ¶ 25, 311 P.3d 1004.

¶ 34 To arrive at this conclusion, we turned to an online dictionary for the definition of "locate," noting that it meant "to determine or indicate the place, site, or limits of" something. *Id.* ¶ 23 (citation omitted). "This suggests," we reasoned, "that a national bank is located in the place or places where it acts or conducts business." *Id.* Relying on two federal decisions, we noted that a bank must conduct business where the property is located. *Id.* ¶¶ 23–25.

¶ 35 We are no longer convinced that "located" is an unambiguous term. As Justice Lee noted in his concurring opinion in *Sundquist I*, "[T]he United States Supreme Court has indicated [that] the term 'located' 'as it appears in the National Bank Act, has no fixed, plain meaning.'" 2013 UT 45, ¶ 56 (Lee, J., concurring) (quoting *Wachovia Bank v. Schmidt*, 546 U.S. 303, 313 (2006)). In *Dutcher v. Matheson*, a Tenth Circuit case dealing with the same question we are faced with today, that court observed that "even assuming *arguendo* that *Sundquist* [*I*] is correct in saying that a national bank's location equates to where it 'acts or conducts business' the court does not identify in § 92a(a)'s text any basis for concluding *what* acts or indicia of conducting business are the relevant ones." 840 F.3d 1183, 1201 (10th Cir. 2016).

---

regulation] does not affect the applicability of state substantive laws that govern the fiduciary relationship." Fiduciary Activities of National Banks, 66 Fed. Reg. 34796 (July 2, 2001).

¶ 36 The Comptroller's regulation, for example, provides that "[a] national bank acts in a fiduciary capacity in the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets." 12 C.F.R. § 9.7(d). A bank certainly "conducts business" in those locations as well as "where the real property is located, where notice of default is filed, and where the sale is conducted." *Sundquist I*, 2013 UT 45, ¶ 23 (citation omitted). But there is nothing inherent in the term "located" that provides guidance on *which* of those acts should determine where a national bank is located.

¶ 37 Although we continue to find logic in a national bank being "located" where the real property it attempts to sell is located, there is nothing in the plain language that mandates that result. Accordingly, the term is ambiguous and we must rely on other tools of statutory interpretation.

### III. Congress Intended the National Bank Act to Displace State Law

¶ 38 Sundquist also argues that Utah law should apply because we presume that absent a clear statement, Congress did not intend for federal law to preempt state law. And we give life to that presumption through the clear statement rule. *See, e.g., Fish v. Kobach*, 840 F.3d 710, 731 (10th Cir. 2016).

¶ 39 The clear statement rule provides that "[i]f Congress intends to alter the usual constitutional balance between the States and the Federal Government, it must make its intention to do so unmistakably clear in the language of the statute." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) (citations omitted) (internal quotation marks omitted). The rule rests on the premise that "the States retain substantial sovereign powers under our constitutional scheme, powers with which Congress does not readily interfere." *Id.* at 461.[5]

---

[5] An interesting question hides beneath the surface of our opinion: whether it is analytically proper to apply the clear statement rule or *Chevron* first. The ordering of the two canons is not settled. Harvard Law Review, *Chevron and the Substantive Canons: A Categorical Distinction*, 124 HARV. L. REV. 594, 599 (2010) ("A number of other canons have been found to displace Chevron, but for some, like the presumption against preemption, the relationship remains

(continued . . .)

¶ 40 In *Sundquist I*, we noted that, under Bank of America's construction, "this provision [of the Act] delegates to the Comptroller the discretion to authorize one state to regulate the terms and conditions of a foreclosure sale in another state." *Sundquist I*, 2013 UT 45, ¶ 36, 311 P.3d 1004. And we reasoned, because "[a] delegation of authority to intrude on matters of such intensely local concern may not simply be inferred[,] . . . a clear statement of an intent to permit the laws of a foreign state to regulate the manner and mode of a foreclosure sale in another state should be required." *Id.* ¶ 37. Sundquist similarly argues that "[t]his usurpation of state law on matters traditionally left to state law cannot be accomplished through an OCC regulation when Congress did not provide it was its clear and manifest purpose."

¶ 41 We continue to believe that this is a traditional area of state law and that a clear statement is required "to alter the usual constitutional balance." *See Gregory*, 501 U.S. at 460 (citations omitted) (internal quotation marks omitted). The United States Supreme Court "has . . . noted the states' longstanding interest in regulating the foreclosure process, and has imposed a clear statement rule on any statutes that could potentially be construed to impinge on that interest." *Tamburri v. Suntrust Mortg., Inc.*, 875 F.

---

unclear."). *Compare Tennessee v. FCC*, 832 F.3d 597, 612 (6th Cir. 2016) ("The first step of Chevron, however, requires that, 'if the intent of Congress is clear, that is the end of the matter.' The force of the clear statement rule . . . makes the intent of Congress clear in this case . . . . There is certainly room for the application of canons of construction to ascertain whether the first step of *Chevron* has been met." (citation omitted)) (inconsistency of italicization of Chevron in original), *with* Brian G. Slocum, *The Immigration Rule of Lenity and Chevron Deference*, 17 GEO. IMMIGR. L. J. 515, 565 (2003) ("[Some commentators] contend that courts should not consider substantive canons [in *Chevron* cases] because (1) the decision whether to read a statute narrowly or aggressively involves a number of political, technical, social, and economic issues, (2) agencies usually possess specialized fact-finding and policy-making competence superior to the judiciary, and (3) *Chevron*'s across-the-board presumption is more workable than any proposed alternative interpretive principle."). We need not address this question because the result we reach remains the same in whichever order we take these questions.

Supp. 2d 1009, 1019 (N.D. Cal. 2012) (citing *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 541–44 (1994)).

¶ 42 But Congress spoke clearly in the National Bank Act. The statute delineates the federal-state law balance that Congress intended to strike with this provision. Banks can "act . . . [in a] fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located." 12 U.S.C. § 92a(a). In other words, Congress clearly stated that it intended to alter the traditional federal-state balance by dictating that a certain set of laws would apply to national banks. And it does not matter which reading we give to the word located. Whatever located means, Congress has instructed that a state has to permit a national bank to act as a fiduciary if institutions that compete with the national bank in the state where it is located can act as a fiduciary. This expresses a federal intent to clomp into an area of traditional state concern.

¶ 43 The Fourth Circuit reached a similar result in *Virginia v. Browner,* 80 F.3d 869 (4th Cir. 1996). That case concerned an Environmental Protection Agency finding that Virginia had failed to comply with the Clean Air Act because Virginia's proposed permitting system did not have adequate provisions for judicial review. *Id.* at 872–73. Virginia challenged the finding. *Id.* at 872. The relevant portion of the statute required "an opportunity for judicial review in State court of the final permit action by the applicant, any person who participated in the public comment process, and any other person who could obtain judicial review of that action under applicable law." *Id.* at 876 (emphasis omitted) (citation omitted). Virginia leveled several arguments against the statute, including that requiring states to provide judicial review in this context violated the clear statement rule. *Id.* at 878. The Fourth Circuit disagreed, concluding that "it is manifestly clear that Congress specifically intended that the states conform their judicial standing rules to meet the [Clean Air Act] standard." *Id.* In particular, the court noted that, "[b]y its terms, [the provision] could apply to *nothing but state courts.*" *Id.* at 879.

¶ 44 The National Bank Act is similarly explicit in its "inten[t] to alter the usual constitutional balance between the States and the Federal Government." *See Gregory*, 501 U.S. at 460 (citations omitted) (internal quotation marks omitted). Congress expressly provided when national banks can act and when state law comes into play. For

example, in 12 U.S.C. section 92a(b), Congress expressed an intent to potentially override state law:

> (b) Grant and exercise of powers deemed not in contravention of State or local law
>
> Whenever the laws of such State authorize or permit the exercise of any or all of the foregoing powers by State banks, trust companies, or other corporations which compete with national banks, the granting to and the exercise of such powers by national banks shall not be deemed to be in contravention of State or local law within the meaning of this section.

Simply stated, Congress sufficiently communicated its intent with respect to section 92a.

### IV. Applying *Chevron,* the Comptroller's Interpretation Is Reasonable

¶ 45 "[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843 (1984). Because we have decided that the term "located" in the National Bank Act is ambiguous, we must now decide whether the Comptroller's interpretation is reasonable.

¶ 46 That regulation provides:

> For each fiduciary relationship, the state referred to in section 92a is the state in which the bank acts in a fiduciary capacity for that relationship. A national bank acts in a fiduciary capacity in the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets.

12 C.F.R. § 9.7(d).

¶ 47 Sundquist argues that this regulation is unreasonable because it "sets forth three criteria that have little to no relevance to foreclosure of a deed of trust."[6] Sundquist also argues that the

---

[6] Sundquist mentions a few times in her brief that the deed of trust provided that federal and Utah law would apply, and she

(continued . . .)

regulation "places the national bank above state banks by giving the national bank the advantage of importing laws from another state that the national bank effectively can choose to control by engaging in the nonessential activities the [regulation] identifies . . . in a state the national bank finds advantageous."

¶ 48 We take each in turn.

---

argues that this makes the application of the regulation irrelevant. The relevant language of the deed of trust reads: "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law." The property is located in Utah. "Applicable Law" is defined in the deed of trust as "all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, nonappealable opinions."

Sundquist cites *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315 (4th Cir. 2012), for her contention that this choice-of-law provision should prevent preemption. *Epps* involved a contract that invoked federal and state law. *Id.* at 318. However, unlike the case before us, the contract in *Epps* "contained an explicit election of a specific Maryland statute": the "CLEC." *Id.* at 328. This election was made by Thompson, the defendant's (Chase) predecessor-in-interest. *Id.* This election was central to the court's reasoning:

> Here, Thompson (and by extension its successor-in-interest, Chase), had the option of either electing to have the [contract] governed by the CLEC, or instead by [another Maryland statute, the RISA]. Thompson chose to adopt the CLEC when it could have made a different choice, the RISA. Chase is bound by that choice.

*Id.* (citation omitted). There was no similar choice here. The parties did not elect to be governed by a specific Utah statute. The contract generally stated that federal law, as well as the law of the state where the property is, would govern. Federal law permitted this sale. If Sundquist believed that the parties agreed that Utah law would operate at the exclusion of federal law, she should have argued that in her brief. On the briefing before us, this choice-of-law provision does not decide the matter.

¶ 49 First, the regulation provides that "[a] national bank acts in a fiduciary capacity in the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets." 12 C.F.R. § 9.7(d). Sundquist argues that the drafters of this regulation might not have had a trustee of a deed of trust in mind. Sundquist also argues that the regulation is unreasonable because, in the context of a trustee sale of real property, the sale itself is the most important activity. Bank of America responds that Sundquist "improperly looks only at trust relationships involving real property. But . . . section 92a enumerates a variety of fiduciary roles for national banks, and it was manifestly reasonable for the Comptroller to define where a national bank is located by referring to activities that apply to all of these roles, rather than only some." (Internal quotation marks omitted.) Furthermore, Bank of America raises a concern that under Sundquist's interpretation a bank might have to be located in different states for different trust functions while performing activities for the same trustor. According to Bank of America, this dynamic makes it reasonable for the Comptroller to base its regulation on a more general set of fiduciary responsibilities that results in a national bank applying the same state's laws to all of those responsibilities.[7]

---

[7] The Solicitor General defended the logic of the Comptroller's decision in its amicus brief to the United States Supreme Court:

> Under widely accepted principles of trust law, those "core functions" [identified in the regulation] constitute essential features of a fiduciary relationship: its establishment, see Restatement (Second) of Trusts § 169 (1959) (trustee's duty to administer trust begins "[u]pon acceptance of the trust by the trustee"); its scope, see Restatement (Third) of Trusts § 76(1) (2007) ("The trustee has a duty to administer the trust . . . in accordance with the terms of the trust."); and its proper administration, see *id.* § 87 cmt. a ("The most important of the discretionary powers in most trusts are those having to do with various aspects of the investment function, together with, in many trusts, those having to do with discretionary distributions.").

(continued . . .)

¶ 50 We can understand Sundquist's desire for a test that would, when determining where a bank is located for the purpose of serving as a trustee on a deed of trust, be more narrowly focused to that context. But we cannot say it was unreasonable for the Comptroller to employ a general framework for all scenarios the statute governs rather than employ a situation by situation approach. Such an approach could lead to national banks operating under different sets of laws in the same state depending on the type of transaction. Even if we were tempted to draw the lines differently than the Comptroller, the Comptroller's "view governs if it is a reasonable interpretation of the statute—not necessarily the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts." *See Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009) (citation omitted).[8]

¶ 51 Second, Sundquist argues that the regulation is unreasonable because it "places the national bank above state banks." The Supreme Court faced a similar argument about the National Bank Act in *Marquette National Bank of Minneapolis v. First of Omaha Service Corp.*, 439 U.S. 299 (1978). In that case, a Nebraska-based national bank sought to enroll residents of Minnesota in a credit card plan. *Id.* at 301–02. Marquette—a bank in Minnesota—brought suit to enjoin the Nebraska bank "from soliciting in Minnesota . . . until such time as that program complied with Minnesota law." *Id.* at 304. "Marquette claimed to be losing customers to [the Nebraska bank] because, unlike the Nebraska bank, Marquette was forced by the low rate of interest permissible under Minnesota law to charge a $10 annual fee for the use of its credit cards." *Id.* The Supreme Court concluded that the national bank could charge the Nebraska interest rate, reasoning that "[s]ince [the national bank] and its [credit card] program are 'located' in Nebraska, the plain language . . . provides that the bank may charge 'on any loan' the rate 'allowed' by the State of Nebraska." *Id.* at 313. The Supreme Court was not moved by the argument that this provided an advantage to the Nebraska bank, concluding that the

---

Brief for the United States as Amicus Curiae at 14–15, *Sundquist II*, 134 S. Ct. 475 (2014) (No. 13-852), 2014 WL 4979386, at *14–15.

[8] Sundquist further argues that the required actions under Utah non-judicial foreclosure law occur in Utah. This argument fails for the same reason. The Comptroller need not tailor the regulation to non-judicial foreclosures—and certainly not to Utah law.

section of the Act applicable in *Marquette* "ha[s] been interpreted for over a century to give 'advantages to National banks over their State competitors.'" *Id.* at 314 (citation omitted).

¶ 52 In light of *Marquette* and the Supreme Court's rejection of an argument similar to Sundquist's, we are hard-pressed to conclude that the Comptroller's regulation is unreasonable.

### V. A Trustee Under a Deed of Trust Acts in a Fiduciary Capacity for the Purposes of Section 92a

¶ 53 Sundquist also argues that a trustee under a deed of trust is not a fiduciary within the meaning of 12 U.S.C. section 92a. Sundquist distinguishes a trustee under a deed of trust from a trustee of a fiduciary trust, arguing that:

> The former [type of trust] is not a trust in the traditional sense, but merely a device used in some states as a substitute for a traditional mortgage on real property for purposes of debt collection. Under a deed of trust, a "trustee" nominally holds legal title to a property to secure a loan and conveys title to the owner upon repayment or, in the event of default, commences foreclosure proceedings, either judicially or, where authorized, through a non-judicial trustee's sale to collect the debt owed. The property is no more held in trust than is a property subject to a traditional mortgage.

¶ 54 In response, Bank of America argues that the Comptroller "has . . . long interpreted section 92a(a) to encompass trustees on deeds of trust."

¶ 55 Section 92a(a) applies to "the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, or in any other fiduciary capacity." And the Comptroller has determined that the statute covers a fiduciary of a deed of trust. Michael Patriarca, OCC Interpretive Letter, 1986 WL 143993, at *1–2 (June 13, 1986) ("We agree that the proposed activities [regarding deeds of trust] are permissible for a national bank as an aspect of trust powers granted by 12 U.S.C. § 92a.").[9]

---

[9] The United States Supreme Court has determined that the Comptroller's "deliberative conclusions" receive *Chevron* deference. *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251,

(continued . . .)

¶ 56 We again turn to *Chevron* to determine whether we must credit the Comptroller's interpretation.[10] First, it is not clear from the statute's text whether "the right to act as trustee, executor, administrator, registrar of stocks and bonds, guardian of estates, assignee, receiver, or in any other fiduciary capacity," 12 U.S.C. § 92a(a), includes trustees of deeds of trust.. These trustees might be included in either the term "trustee" or the catch-all "in any other fiduciary capacity." As noted above, Sundquist plausibly argues why we might treat these trustees differently. But Bank of America also provides a compelling interpretation: "[Congress's] use of the phrase 'trustee . . . or . . . any other fiduciary capacity' strongly suggests that Congress regarded any 'trustee' as a 'fiduciary capacity.'" (Omissions in original) (Quoting *id.*) The statute, on its face, is ambiguous.

¶ 57 And the Comptroller's interpretation—that the term "trustee" includes trustees of a deed of trust—is reasonable. *See* Michael Patriarca, OCC Interpretive Letter, 1986 WL 143993, at *1–2 (June 13, 1986). It is perfectly logical to read "trustee" to include all trustees rather than only traditional ones. And the fact that Texas and Utah law might see it differently does not make this regulation unreasonable.[11]

---

256–57 (1995) ("The Comptroller of the Currency is charged with the enforcement of banking laws to an extent that warrants the invocation of [deference] with respect to his deliberative conclusions as to the meaning of these laws." (citation omitted)).

[10] By way of reminder, *Chevron, U.S.A., Inc. v. National Resource Defense Council, Inc.,* provides a framework for when to defer to agency interpretations. 467 U.S. 837 (1984). First, this court must ask if Congress has spoken clearly, and if so, give effect to "the unambiguously expressed intent of Congress." *Id.* at 842–43. If the statute is ambiguous, however, we then defer to the agency only if its interpretation "is based on a permissible construction of the statute." *Id.*

[11] Sundquist also argues that we should not defer to the Comptroller because defining "fiduciary" is not within its realm of expertise. Sundquist cites two cases for the proposition that agencies are not entitled to deference for interpreting law outside their expertise. But Sundquist offers no analysis of how these cases apply

(continued . . .)

¶ 58 Whether trustees of deeds of trust function in a fiduciary capacity under 12 U.S.C. section 92a(a) is not clear from the statute's text. We therefore defer to the Comptroller's interpretation that the statute's reference to trustees includes trustees on a deed of trust.

## VI. We Remand to Permit the District Court to Evaluate Where ReconTrust Is Located Under the Correct Standard

¶ 59 We conclude that section 92a(a) applies and that ReconTrust is located where "the bank acts in a fiduciary capacity for that relationship." 12 C.F.R. § 9.7(d). We are bound to interpret "located" in harmony with the Comptroller's instruction that a "national bank acts in a fiduciary capacity in the state in which it accepts the fiduciary appointment, executes the documents that create the fiduciary relationship, and makes discretionary decisions regarding the investment or distribution of fiduciary assets." *Id.*

¶ 60 ReconTrust asserts that under that definition, it is located in Texas. Sundquist argues that under the Comptroller's test, ReconTrust is not located in Texas. Specifically, Sundquist argues that a bank is "appointed trustee of a trust deed does not 'execute' any documents creating a fiduciary relationship, nor does it 'accept' a fiduciary appointment in any location distinct from that where the deed is filed; and a trust deed trustee makes no 'discretionary decisions regarding the investment of fiduciary assets.'"

¶ 61 Bank of America disputes this, arguing that the record shows that ReconTrust performed all three of these actions in Texas. Because the district court, following our lead from *Sundquist I*, applied Utah law to the dispute, it has not considered Sundquist's

---

here, or why interpretation of "fiduciary" would fall outside the Comptroller's expertise.

"[A]n appellant who fails to adequately brief an issue 'will almost certainly fail to carry its burden of persuasion on appeal.'" *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 12, 391 P.3d 196 (citation omitted). "The argument must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal." UTAH R. APP. P. 24(a)(8). "'[A]n issue is inadequately briefed if the argument "merely contains bald citations to authority [without] development of that authority and reasoned analysis based on that authority."'" *Adamson*, 2017 UT 2, ¶ 11 (second alteration in original) (quoting *State v. Timmerman*, 2009 UT 58, ¶ 25 n.5, 218 P.3d 590).

argument on this point. Because the district court has not had the opportunity to address this issue and because of the potential need for factual findings, we remand for the district court to consider this argument.

## CONCLUSION

¶ 62 What Congress meant by the term "located" in the National Bank Act cannot be determined from the statute's plain language. Because this is a federal statute accompanied by an agency's interpretation of the ambiguous language, *Chevron* requires us to defer to the "not unreasonable" interpretation the agency has provided. Because the Comptroller's interpretation of where a bank is "located" is reasonable, we reverse and remand. On remand, the district court should apply section 92(a), as interpreted by the Comptroller, to determine where ReconTrust is located and apply the law of that jurisdiction.

———————